UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Derrick Riddle,                                                  Civil No. 10-3128 (SRN/LIB)

                     Petitioner,

    v.                                                          **REPORT AND RECOMMENDATION**


Bruce Reiser, Warden,

                     Respondent.

_____

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254.  The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  On December 23, 2008, Petitioner Derrick Riddle ("Petitioner") was convicted of attempted theft by swindle, Minn. Stat. § 609.52, subd. 2(4) and 3(1) in Hennepin County District Court. (Pet. [Docket No. 1], p. 2; Resp't. Mem. [Docket No. 10] p.1.) Petitioner was released from custody of the Minnesota Correctional Facility Rush City ("MCF-Rush City") on September 10, 2010, and remained on Intensive Supervised Release. (Resp't. Mem., p.7; Appendix [Docket No. 11] p. 161.)

Petitioner filed the current federal habeas corpus petition under 28 U.S.C. § 2254 while in custody at MCF-Rush City on July 27, 2010, therefore, meeting the "in custody" requirement of § 2254. See Jones v. Jerrison, 20 F.3d 849, 852 n. 2 (8th Cir. 1994) (federal

court retains jurisdiction over habeas petition if jurisdiction existed at the time the petition was filed.)

The petition lists three grounds for relief:

- Ground One alleges "conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure." (Pet., p. 5);

- Ground Two alleges "[t]he court of Hennepin County deny the Petitioner the right to call a witness to testify." (Pet., p. 5);

- Ground Three alleges "Deny a Pro-Se defendant access to law books or law library." (Pet., p. 6.)

Petitioner filed a "Memorandum in Support Petition of Habeas Corpus 28 U.S.C. § 2254" with his petition. (Pet., pp. 8-28.)

Respondent filed an Answer and a Memorandum [Doc. Nos. 9 and 10], in which Respondent opposed granting a Writ of Habeas Corpus. In the memorandum, Respondent argued Ground One of the petition should be denied on the merits because the Minnesota Court of Appeals correctly held that an intercepted communication with the consent of one party does not violate the Fourth Amendment or 18 U.S.C. § 2511(2)(c). (Resp't. Mem., pp. 8-9.) Respondent argued Ground Two of the petition should be denied on the merits because the Minnesota Court of Appeals properly applied a well-established rule of evidence in determining the witness testimony Petitioner sought was not relevant, and this decision was not contrary to or an unreasonable application of clearly established Federal law. (Resp't. Mem., pp. 10-13.) Respondent also argued Ground Three of the petition should be dismissed as procedurally defaulted because Petitioner failed to fully and fairly present his

federal constitutional claim in state court. (Resp't. Mem., pp. 13-19.)

For the reasons discussed below, it is RECOMMENDED that the petition be DENIED.

## I. FACTUAL BACKGROUND

The facts, as found by the Minnesota Court of Appeals on Petitioner's direct appeal of his conviction, are as follows.

> In September 2008, Tom Petters was charged with a number of offenses in federal court. Petters hired attorney Jon Hopeman to represent him. The charges and proceedings were widely publicized in local and national media. Many news reports identified Hopeman as Petters' attorney.
>
> On Sunday, October 19, 2008, Hopeman arrived at his office and checked his voicemail. A message had been left at 11:25 p.m. on October 17. In the message, a man who identified himself as "Derrick" stated that he knew people who wanted to "help [Petters] beat his case, you know, put a judge in his pocket. Two hundred and fifty thousand to beat the case." The man gave a telephone number and asked Hopeman to return the call. Hopeman called John Marti, one of the federal prosecutors assigned to Petters' case, and told him that a person contacted him proposing to bribe a federal judge to make the Petters case go away. Marti told Hopeman that an FBI agent would contact him.
>
> When Hopeman arrived at his office on October 20, his receptionist told him that a man had been in the office asking to see him. The man, who had identified himself as "Derrick," left a note with the same telephone number that had been given in the voicemail and asked Hopeman to call him. Hopeman again called Marti, who told him that an FBI agent would immediately be sent to Hopeman's office. FBI agent David Kukura soon arrived at Hopeman's office. After listening to the voicemail message, Kukura asked Hopeman to call Derrick. In a call recorded by Kukura, Hopeman asked Derrick to meet with him that afternoon in Hopeman's office. Kukura planned to pose as Hopeman's law partner during the meeting. With Hopeman's

consent, Kukura placed audio and video surveillance equipment in a conference room at Hopeman's office.

At approximately, 1:45 p.m., a man later identified as appellant Derrick Lee Riddle arrived at Hopeman's office. Appellant said that he did not want to meet with anyone but Hopeman, so appellant and Hopeman met alone in the conference room where Kukura had set up the surveillance equipment. During their recorded conversation, appellant told Hopeman that he was only a messenger, sent by an organization called "M.B.G., Motivated by Greed," which was made up of elected officials. Appellant said that judges, the prosecution, and individuals in the federal government can and want to make the case about Petters "go away." Appellant proposed that Hopeman meet with Petters to discuss appellant's proposal. On a piece of paper, appellant wrote: "$250,000 to this Address 4007 Bryant AVE N. By 12:00 pm Friday." When asked what form the money should be in, appellant wrote and underlined the word "cash." When asked where the money would go, appellant stated, "That money is going to the judge he's payin'." Appellant stated that, after the money was delivered, the judge would call Hopeman within 24 hours to further discuss details. Appellant also intimated that Hopeman stood to gain significantly financially in return for his cooperation. Near the end of the conversation, appellant asked Hopeman if the room was bugged. Hopeman replied that it was not and that he could lose his license for taping their conversation. Finally, Hopeman said that he would like to meet and talk with someone who was an "actor" in this proposal. At that point, appellant stated that he could get another representative to contact him and that his "job is done."

On October 24, Hennepin County Sheriff's deputies executed a search warrant at the Bryant Avenue address . . . [and] arrested appellant and took him to the county jail, where he denied taking part in any attempted bribery involving Petters or Hopeman. Appellant was charged by complaint with attempted theft by swindle in violation of Minn. Stat. §§ 609.52 subd. 2(4); [609].17, subd. 1 (2008) . . .

State v. Riddle, No. A-09-526, 2010 WL 771791, at *1-2 (Mn. Ct. App. March 9, 2010) rev. denied (May 26, 2010.)

## II.   PROCEDURAL HISTORY

Petitioner filed a direct appeal of his conviction, and he and his counsel filed separate briefs and replies in the Minnesota Court of Appeals (Appellant's Br., Appellant's Pro Se Supplemental Brief, Appellant's Reply Brief and Appellant's Pro Se Supplemental Reply Brief [Doc. No. 11, Appendix ("App.") pp. 1-61, 116-29]).  In the brief by his counsel, Petitioner raised the following issues on appeal:

- "RIDDLE'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COMPULSORY PROCESS WERE VIOLATED WHEN THE DISTRICT COURT TRIED TO FORCE HIM TO ACCEPT A STIPULATION TO PETTERS' TESTIMONY, IN LIEU OF CALLING PETTERS AS A WITNESS, BECAUSE OF THE COST OF TRANSPORTING PETTERS TO THE COURT."

- "THE DISTRICT COURT SHOULD HAVE INSTRUCTED THE JURY ON ABANDONMENT BECAUSE EVIDENCE SUPPORTED THE INSTRUCTION AND SHOULD NOT HAVE MODIFIED THE IMPOSSIBILITY INSTRUCTION IN A CONTRADICTORY AND CONFUSING WAY"

(App., p. 2).

In his pro se supplemental brief, Petitioner stated, "[t]his is a illegally Interception case Statutory & Constitutional Violation State & Federal 626A. & 2511 subd.2(d) the heart of this brief is the Misinterpretation of the state and federal 626A.02 & 2511 subd. 2(d)."  (App., p. 32.)  Petitioner also argued that he was denied his Sixth Amendment right to call a witness at trial.  (App., p. 35).  The remaining issue Petitioner raised was that he was denied access to a law library and law books.  (App., pp. 36-37.)

The Minnesota Court of Appeals denied relief in a decision dated March 9, 2010. Riddle, 2010 WL 771791.  The court held the expected testimony of the witness that the

Petitioner was not allowed to call at trial was not relevant to Petitioner's defense; and the court's exclusion of the evidence was proper and did not violate Petitioner's constitutional right to compulsory process.  Id. at *3.

The court also held that no state or federal law or constitution were violated by the surveillance recordings.  Id. at *6.  The court cited Minn.Stat. § 626.A02, subd, (2)(c); 18 U.S.C. § 2511(2)(c); United States v. Caceres, 440 U.S. 741, 744 (1979) and State v. Olkon, 299 N.W.2d 89, 102-03 (Minn. 1980).

> Finally, the court held:
>
> > Appellant has not cited any authority or made any arguments that support his claims that he was denied adequate access to legal materials while incarcerated . . . Assignment of error based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. State by Humphrey v. Modern Recycling, Inc., 558 N.W.2d 770, 772 (Minn.App. 1997); see State v. Yang, 774 N.W.2d 539, 552 (Minn. 2009) (applying standard in criminal case).  Because we find no obvious error, these claims are waived.

Id. at *7.

Petitioner appealed to the Minnesota Supreme Court, which denied review on May 26, 2010.  (Pet. for Review of Decision of Ct. of App. and Order, *State v. Riddle*, A09-526 (Minn. May 26, 2010) [Doc. No. 11-1, App., pp. 136-48.])  Petitioner's habeas corpus petition followed.

## III.   DISCUSSION

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs

federal courts to engage in a "limited and deferential review of underlying state court decisions." Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011) (quoting Collier v. Norris, 485 F.3d 415, 421 (8th Cir. 2007) (quoting Morales v. Ault, 476 F.3d 545, 549 (8th Cir. 2007)). Under the AEDPA, relief may not be granted to the petitioner unless he demonstrates the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Federal courts consider a decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). An "unreasonable application" of federal law exists when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411)). During review of a state court decision, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A

petitioner can only rebut the presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

### B.     Ground One:  Petitioner's Fourth Amendment and Statutory Claim

Petitioner's claim is a legal one, not a dispute over the factual findings of the state court.  Therefore, this Court considers whether  the Minnesota Court of Appeals denial of this claim was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court**.**  In denying Petitioner's arguments that it was illegal to make recordings of him without his consent and use those recordings at trial, the Minnesota Court of Appeals cited United States v. Caceres, 440 U.S. 741, 744 (1979).

In Caceres, the Court held that even if the IRS violated its own regulation by recording conversations with the petitioner, "[n]either the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants." 440 U.S. at 744 and n.2 (citing United States v. White, 401 U.S. 745, 752 (1971) (plurality opinion); Lopez v. United States, 373 U.S. 427 (1963); 18 U.S.C. § 2511(2)(c).[1]  The Court further held that the Constitution does not protect the privacy of an individual in the respondent's situation, a person speaking to an IRS agent. Id. at 750.  The Court noted the same was true of a police agent who concealed his police connections while recording a defendant's conversation. Id.

---

[1] 18 U.S.C. § 2511(2)(c) (2008) provides: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

at 751 (citing On Lee v. United States, 343 U.S. 747 (1952)). In other words, "one has no constitutionally protected expectation that the person to whom he voluntarily reveals incriminating information will keep it secret." U.S. v. Quintana, 508 F.2d 867, 881 n.3 (7th Cir. 1975) (noting 18 U.S.C. § 2511(2)(c) does not violate the Fourth or Fifth Amendments, and citing U.S. v. White, 401 U.S. 745, 751 (1971) and Hoffa v. United States, 385 U.S. 293 (1966)).

First, Petitioner has not cited any U.S. Supreme Court precedent for his contention that 18 U.S.C. § 2511(2)(c) requires a warrant before a recording pursuant to that section is made. This Court finds no such precedent, and therefore, rejects the contention. See U.S. v. Barone, 913 F.2d 46, 48-49 (2nd Cir. 1990) (no need to inform defendant of recording or obtain a court order).

Second, Petitioner cites the following cases in support of his argument that the recording of the conversation in his case violated the Fourth Amendment: Katz v. U.S., 389 U.S. 347 (1967); Berger v. N.Y., 388 U.S. 41 (1967); Osborn v. U.S., 385 U.S. 323 (1966); Warden v. Hayden, 387 U.S. 294 ( (Pet., p. 10, 15-16.)² Petitioner admits the Supreme Court

---

²   The Court in Katz held that the government's activities in electronically listening to and recording defendant's words spoken into a telephone receiver in a public telephone booth violated the privacy upon which defendant justifiably relied while using the telephone booth. 389 U.S. at 358-59. In Berger, the Court found a New York statute violated the Fourth Amendment by allowing issuance of an ex parte order for eavesdropping upon "oath or affirmation of a district attorney or of the attorney-general or of an officer above the rank of sergeant of any police department of the state . . . where the oath stated there was "reasonable ground to believe that evidence of crime may be thus obtained . . ." 388 U.S. at 54. The Supreme Court in Osborn held that the use of a recording device was permissible and the recording was properly admitted as evidence where it was judicially authorized based on a detailed factual affidavit for a narrow and particularized purpose. 385 U.S. at 330. Under the circumstances presented in Osborn, the Court

has not "pass[ed] on the federal statute [18 U.S.C. § 2511(2)(c)] and to determine whether its procedure and authorizations comport with the standards sketched in Osborn, Berger and Katz." (Pet., p. 18.)

The Court notes that each case cited by Petitioner was decided before Congress passed the statute at issue, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 211, entitled Wiretapping and Electronic Surveillance. See Bartnicki v. Vopper, 532 U.S. 514, 523 (2001) (largely in response to the holdings of Berger and Katz, "Congress overtook to draft comprehensive legislation both authorizing the use of evidence obtained by electronic surveillance on specified conditions, and prohibiting its use otherwise.") (internal citation omitted); Napper v. U.S., –A.3d–, 2011 WL 2226858 (D.C. June 9, 2011) (the federal wiretapping statute was intended to codify the Fourth Amendment test established in Katz.) Petitioner is correct that the Supreme Court has not determined whether 18 U.S.C. § 2511 (2)(c) comports with any of the cases cited by Petitioner. However, in U.S. v. Caceres, the Supreme Court reiterated its holdings in White and Lopez, that "[n]either the Constitution nor any Act of Congress requires that official approval be secured before conversations are overhead and recorded by Government agents with the consent of one of

---

did not need to base its holding on Lopez, but noted that unless Lopez were to be disregarded, the petitioner could not prevail because Lopez allowed one party to a conversation to use a recording device to make an accurate record of a conversation about which that party later testified. Id. at 328 (discussing Lopez v. U.S., 373 U.S. 427 (1963)). In Hayden, the Court held that there was no distinction for Fourth Amendment purposes of seized items that were "mere evidence," as opposed to instrumentalities, fruits of crime or contraband. 387 U.S. at 301-02.

the conversants." Caceres, 440 U.S. at 744. This holding is applicable to Petitioner's case, where an informant gave consent to an FBI agent to record his conversation with Petitioner. See also Lewellen v. Raff, 843 F.2d 1103, 1115-16 (8th Cir. 1988) ("Fourth Amendment rights are not violated when . . . conversations with a government informant are electronically monitored by a government agent with the consent of the informant." (quoting United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975). Therefore, Petitioner has failed to meet his burden to show the Minnesota Court of Appeals unreasonably applied Supreme Court precedent when it denied Petitioner's claims that recording him without his consent or obtaining a warrant and use of the recordings at trial violated federal law and the U.S. Constitution.

    **C.**    **Ground Two: Petitioner's Sixth Amendment Claim**

Petitioner cites Washington v. Texas, 388 U.S. 14 (1967) for the proposition that the Sixth Amendment right to compulsory process generally gives a defendant the right to call any witness who is physically and mentally capable of testifying to events that the witness personally observed, and whose testimony would have been relevant and material to the defense. (Pet., p. 20.) Respondent asserts the Minnesota Court of Appeals properly applied a well-established rule of evidence in determining that the testimony Petitioner sought from Tom Petters was not relevant to whether Petitioner committed the crime of attempted theft by swindle. (Resp't. Mem., pp. 12-13.) Respondent cites Holmes v. South

Carolina, 547 U.S. 319, 325-27 (2006)[3] for the proposition that trial judges may exclude evidence if its probative value is outweighed by certain other factors, and where evidence is repetitive or only marginally relevant.

The Minnesota Court of Appeals recognized that a criminal defendant has a Sixth Amendment right to compulsory process for obtaining witnesses but noted the right was not absolute because evidence that is not relevant is inadmissible. Riddle, 2010 WL 771791 at *3 (citing State v. Woelfel, 621 N.W.2d 767, 773 (Minn. App. 2001) rev. denied. (Minn. Mar. 27, 2001).[4] The Court held that Petters' expected testimony, that he was not aware of appellant's plan to ask Hopeman for $250,000, was not relevant because the state did not have to prove that an intended victim knew about the swindle, but only that the appellant performed a substantial act toward swindling money from another person. Id.

> Of course, admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas corpus relief. . . Only when the evidence ruling impinges on a specific constitutional protection or is so prejudicial that it amounts a denial of due process may a federal court grant a habeas corpus remedy.

---

[3] In Holmes v. South Carolina, the Supreme Court reiterated its earlier statement that "the Constitution permits judges to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" 547 U.S. at 326-27 (quoting Crane v. Kentucky, 476 U.S. 683, 689-90 (1986) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

[4] In State v. Woelfel, the court stated that a defendant has no constitutional right to present irrelevant evidence. 621 N.W.2d 767, 773 (Minn. Ct. App. 2001).

Barrett v. Acevedo, 169 F.3d 1155, 1163 (8th Cir. 1999). Petters' testimony that he was unaware of Petitioner's plan to swindle him is irrelevant where the evidence indicated Petitioner went through Petters' attorney to ask Petters for $250,000 to bribe a judge to "fix" his case. As the Minnesota Court of Appeals noted, under state law, Petitioner could be found guilty of attempt to swindle without proving an intended victim knew about the swindle. See State v. Sybrant, No. A06-1599, 2007 WL 3257243 at *1 (Minn. Ct. App. Nov. 6, 2007) ("essential elements of attempted theft by swindle are: (1) intent to commit theft by swindle, which has the following elements: (a) obtaining property from another because of the swindle; (b) intent to obtain the property; and (c) a swindle, the essence of which is the cheating of another by a deliberate artifice or scheme; and (2) the defendant did an act that was a substantial step toward the commission of that crime." This Court finds that the trial court's evidentiary ruling was not so prejudicial as to violate Petitioner's right to due process because Petters' testimony that he did not know about the scheme would not have precluded Petitioner from being convicted of attempt to commit theft by swindle.

**D.    Ground Three: Petitioner's Access to Legal Materials Claim**

Respondent contends this claim is procedurally defaulted because Petitioner failed to fairly present the federal nature of the claim in state court, and the Minnesota Court of Appeals found the claim to be waived because Petitioner failed to cite any facts or authority.

In a petition for habeas corpus, a Petitioner must successfully show that he exhausted the state remedies for each claim he brings. 28 U.S.C. § 2254(b)(1)(A). The doctrine of exhaustion requires a petitioner to "fairly present" his federal claims to the state courts.

Baldwin v. Reese, 541 U.S. 27, 29 (2004).   Petitioners must present the substance of any federal claims "in each appropriate state court (including a state supreme court with powers of discretionary review)." Id.  The petitioner must "have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." McCall v. Benson, 114 F.3d 754, 757 (8th Cir.1997) (internal quotations omitted).  When a prisoner fails to exhaust his state court remedies for a claim, and state procedural rules preclude any attempt to satisfy the exhaustion requirement for that claim, then the claim is not unexhausted, but rather "procedurally defaulted." Coleman v. Thompson, 501 U.S. 722, 729-32 (1991).  Thus, if a state court remedy remains, courts classify a previously unraised habeas claim as "unexhausted," but if state court remedies are no longer available, then courts consider the claim "procedurally defaulted." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005).

Upon review of all of Petitioner's briefs filed in the Minnesota Court of Appeals, this Court finds that Petitioner did not fairly present the federal nature of his claim because he did not cite any federal law, the Federal Constitution, or any cases citing federal constitutional law regarding access to legal materials.  Thus, Petitioner did not exhaust this claim because he did not fairly present the federal nature of the claim in state court.

The claim is procedurally defaulted because Petitioner no longer has any avenue for relief available to him in state court.  The Minnesota Court of Appeals found the claim to be waived because Petitioner did not cite facts or authority in support of the claim, and the

Minnesota Supreme Court denied review.

"The Minnesota Supreme Court has established that all matters known but not raised on appeal "will not be considered upon a subsequent petition for post conviction relief." Greer v. Minnesota, 493 F.3d 952, 956 (8th Cir. 2007) (quoting State v. Knaffla, 309 Minn. 246, 243 N.W.2d 737, 741 (1976)). Petitioner is now precluded by the Knaffla rule from bringing the claim in a state court post conviction proceeding, because he was aware that he had a federal constitutional claim on direct appeal, but failed to raise it as such. There are two exceptions to the Knaffla rule. Id. (citing Roby v. State, 531 N.W.2d 482, 484 (Minn. 1995). First, a post-conviction court can consider new claims that were "so novel that it can be said that its legal basis was not reasonably available to counsel at the time the direct appeal was taken and decided." Id. The federal nature of a claim arising under the First Amendment for denial of access to the courts due to inadequate access to legal materials was not novel when Petitioner brought his direct appeal. See Flittie v. Solem, 827 F.2d 276, 280 n.9 (8th Cir. 1987) ("[r]ight of access to the courts has been viewed as an aspect of the freedom of petition clause of the First Amendment"); see Bounds v. Smith, 430 U.S. 817, 828 (1977) (holding "fundamental constitutional right of access to the courts requires prison authorities" to provide assistance to inmates in filing meaningful legal papers by providing adequate law libraries or "adequate assistance from persons trained in the law.")

The second exception to the Knaffla rule is where "fairness so requires" review of the claim, "if the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal." Greer, 493 F.3d at 956. Petitioner's failure to cite the federal nature of his access

to legal materials claim was inexcusable, and this exception to the Knaffla rule does not apply. Therefore, the claim is procedurally defaulted.

A petitioner can overcome a procedural default, for purposes of obtaining habeas review, only by a showing of cause and prejudice or actual innocence. Hunt v. Houston, 563 F.3d 695, 703 (8th Cir. 2009) (citing Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004). Petitioner has not attempted to make a showing of actual innocence, and would have a very difficult time showing cause and prejudice because he had standby counsel available to assist him with legal research. See U.S. v. West, 557 F.3d 151, 152-53 (8th Cir. 1977) (right of access to courts satisfied where pro se defendant had attorney available to obtain legal materials for him.) Therefore, this Court recommends denying Ground Three of the petition as procedurally defaulted.

## III.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE.**

## IV.   CERTIFICATE OF APPEALABILITY

The Court will grant a Certificate of Appealability when the petitioner makes a substantial showing of the denial of a constitutional right. See, 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To succeed, the Petitioner must show that the issues are "debatable among reasonable jurists, a court could resolve the issues

differently, or the issues deserve further proceedings." <u>Flieger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994). Here, the Court finds it improbable that any other court would decide the issues Petitioner presents any differently or find that any issue warrants further proceedings. Thus, the Court further recommends that Petitioner not be granted a Certificate of Appealability.

Dated: August 9, 2011                            s/Leo I. Brisbois
                                                 LEO I. BRISBOIS
                                                 United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 23, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.